Good morning all. Our first case for argument this morning is Flores-Andrade v. Lynch. Mr. Kola. Good morning, Your Honor. May it please the court, counsel. My name is Yusuf Kola. I represent the petitioner in this matter, Louis Flores-Andrade. Mr. Andrade has now lived in the United States approximately 30 years of his life. Most of his life has been spent in the United States. He's married, the father of three children, born in the United States. His father himself is a permanent resident of the United States. Mr. Flores was placed in removal proceedings in 2012 as a result of being detained at the border. Pursuant to that, he applied for a type of relief known as cancellation of removal. The court is aware of what cancellation of removal entails. I'll just go over the quick synopsis of it. It requires that you prove you've been here for 10 years, that you don't have certain criminal backgrounds, you have family members who are dependent upon you to stay, and you merit a relief soft in this case. In this particular case, the issue before the court that pre-terminated the process of cancellation of removal was the issue of the 10-year continuous residence. The standard with regard to the issue of 10 years is that all that Mr. Andrade has to prove is that he's been here for 10 years preceding the date of the notice to appear. In essence, the charging documents sought to deport him. Mr. Andrade was here since 1987. I don't think anybody disagrees with the fact that he's been here since 1987. He had an arrest in 1990 for an offense with regard to a theft offense, I believe, out of Kane County. The issue comes down to what transpired as to when he left the United States and when he came back to the United States. Under the cancellation of removal provisions, there's a certain provision that says you cannot be outside of the United States for 90 days or 180 days in the aggregate of that 10-year period of time. What our position is is that the court erred and the Board of Immigration in affirming that decision erred by putting the burden on Mr. Andrade to prove a negative. He had to prove that he's been here for the whole 10 years consistently for all that period of time. That's not what this court requires and that's not what's required in the Board of Immigration. What's required is once Mr. Andrade places his case forward and says, I have the 10-year period, it's the government's burden to come up with proof that he is missing a period of time within that 10 years, either a 90-day one period of time or 180-day one aggregate period of time throughout the course of this time frame. The court in this case kind of just jumped the gun and switched the burden over to Mr. Andrade to prove a negative. This similar issue was addressed by this court in Lopez Esparza where it dealt with not a 90-day issue but a 180-day aggregate issue. In that case, again, it was exactly the exact same judge placed the burden on the petitioner to prove a negative. And this court disagreed with that, said that shouldn't be done. The burden is upon the government to prove first the negative and then Mr. Andrade or any petitioner to address that issue. In this particular case, there's an issue about when he was detained or when he entered the United States. If we take Mr. Andrade at his word, then we have him clearly within 90 days. We have him at 80 days outside of the country as opposed to 90 days. The government presented no evidence other than a document known as an I-213. An I-213 is, I guess, the equivalent of a police report that's generated by the Immigration Service. There's no witnesses presented to attest to what that says. Even though this court and the Board of Immigration has found those documents are generally reliable. In this particular case, the burden should have been on the government to present some kind of evidence. Once Mr. Andrade presented his case, the court shouldn't have pre-terminated his case, let the case progress, then the government would come forth with its evidence and then we can challenge that evidence in a more effective way when it presented that evidence. This kind of all just slipped in through cross-examination and so forth. But even if we take the II-I-13 as being evidence in this case, Mr. Andrade testified that he was here on a certain day. Mr. Andrade has a limited education, has a limited experience in life and so forth. He's basically a laborer. He's lived and worked most of his life in the United States. So we can't hold him to the same standard of keeping a diary every time and so forth and so forth. But he was very consistent in saying, I was here in March of 2012 as opposed to April of 2012. He consistently stated that. The I-II-13 was prepared at a later date and we know it's prepared at a later date because if you look at the I-II-13 form, it says Mr. Andrade crossed the border on April 3rd. That's on page, it's tab C of our filing, but it's page 98 of the record. And it says he crossed the border on April 3rd. However, this report, if it's true and accurate, was dated April 5th and it indicates the encounter occurred on April 5th, which couldn't be the case because if he was crossing the border on April 5th, then how did they put the date of April 3rd in there? So there's an inconsistency in the I-II-13. Is it enough to blow it completely out of the water? No, but it's enough to bring doubt into that question. It requires a more evidentiary hearing to address that issue. We must remember Mr. Andrade has been here for 30 years now. No one can contest the fact that he's been here for 30 years. The evidence is overwhelming that he's been here 30 years. The issue comes down to what happened in that period of time between March 15th and April 3rd or April 5th or April 27th when all this immigration issue occurred. The benefit of the doubt should go to the petitioner in this case because he's the one that knows what happened the most because he's the one that was there. The officer that prepares this report is never there to testify.  We have no ability to challenge what's on the I-II-13 other than what's accepted on the I-II-13 form itself. The court and the Board of Immigrations made an error in placing the burden on the petitioner in this case to prove a negative, and this court has frowned upon the petitioner requiring to prove a negative in this case. He was consistent in his testimony, even though they go forward and backwards somewhat. The issue is was he out of the country for 90 days or more, as the court said. It was improper to put that burden upon him. The burden is on the government at that stage. It's not on him. All he has to do is prove that he's been here for 10 years prior to the issuance of the notice to appear, the charging document. Mr. Kola, do you have any concerns about our jurisdiction? With regard to jurisdiction, this court has addressed that issue in Lopez Esparza. The issue is generally the court lacks jurisdiction on discretionary grounds, lacks jurisdiction with regard to cancellation cases. However, with regard to the issue of the 10-year continuous physical presence, this court has held in Esparza and several cases that are referred to in Esparza that says this court has jurisdiction because it's a non-discretionary ground, the 10-year issue. The 10-year issue is a non-discretionary ground, while the issue with regard to all the other matters on cancellation are discretionary. Are you familiar with our 2014 case, Adami v. Holder? To be honest, I'm not familiar with that case, and I want to sit here and say that I am familiar with that case. Well, it creates a narrow exception for legal issues regarding the meaning of continuous presence, but it doesn't give us room on expanding for purposes of getting further evidence. But with regard to continuous physical presence, it's a non-discretionary factor. If the court says you don't have the continuous physical presence, then you're not in there. It's a law question. Did he fall within the box of the law? And our position is that is a legal question. It's not a question of discretion or issue of the cancellation case in general. If it was the cancellation in case in general and says Mr. Andrade doesn't deserve it, then, yes, the court would lack jurisdiction in this matter. Thank you.  Thank you, Mr. Kohler. Mr. Stanton. May it please the court. This is a case that really turns on the burden of proof and the standard of review. Initially, the government had the burden of proof to show that the petitioner here was removable, and the government did that. There's no question about that. The government charged that the petitioner entered the country without inspection, and the petitioner conceded that he was removable. At that point, the burden was on the petitioner to demonstrate relief from removal, and he attempted to do that here. He sought cancellation of removal, and at all times he bore the burden to demonstrate he fulfilled the elements necessary for the relief of cancellation of removal. An issue here is whether he had the 10-year continuance presence in the United States without a 90-day interruption. I want to make clear for one thing that this should have been more explicit in our brief, but there is no mandatory denial bar at issue here. The mandatory bars are set forth in the removal statute 8-1231B-3B. They deal with things like the persecution bar, whether the petitioner was a member of a group that committed atrocities, whether the person is a threat to national security in the United States, whether the person had already resettled in another country, and a few others I may be forgetting. But the 90-day period, that's part of the elements of cancellation of removal. If anyone, as a trial judge, you might be familiar that the plaintiff has the burden to show the elements of his or her case. The defendant, during cross-examination, may try to rebut some of those elements, and at that point the judge decides whether to grant erupted verdict to the defendant in determining whether or not the plaintiff met his burden of proof. That is analogous to what happened here. The burden was never on the government to prove that the petitioner was gone for more than 90 days. The government, at most, may have had the burden of persuasion, and the government, I believe, met that by producing the I-213 form, which indicated that the petitioner had entered the United States on April 3rd, 2012. This court has recognized several times it's presumably reliable. They are created by disinterested government workers, and there's generally no need to require cross-examination of the preparer of the document, absent some indicia that the form is unreliable. This court has recognized some circumstances where the form may be unreliable, but none of those instances are applicable here. This is not a case where the form was prepared years after the interview. This is not a case where the evidence was the interview was taken from somewhere, or the petitioner admitted that not only did he discuss that he was examined by the examining officer from the Border Patrol, but also that he actually told the Border Patrol that he entered the United States on April 3rd. That's on page 88 of the record. Did you tell the examining officer that you arrived on April 13th? Yes, but I was mistaken. And it also brings me up to the standards review that the agency here made a finding that the petitioner had not met his burden because he was not here for the 10-year continuance periods due to his 90-day absence. And under this court's standard review, the court cannot disturb that finding unless the petitioner has compelled reversal. And that standard just has not been met here. The fact that anyone on this court might have reached a different decision from the immigration judge, that may be the case, but that is not enough to compel reversal. With respect to this court's jurisdiction, I would also suggest that there may be also an exhaustion of remedies issue here. This whole improper burden shifting argument presented in the petitioner's brief, that was not presented to the board. Again, that should have been in our brief, but it came up during oral argument preparation, so again, I apologize to the court in that regard. So I don't think the court has any questions about anything. If not, I will rest on the briefs. Thank you. Yes. Okay. All right. Thank you. Yes, sir. Cola? Just a briefing. Counsel for the government said that the person who prepares this I-213 notice is a disinterested person. He's not a disinterested person. That person is a federal agent whose job is to arrest and deport people. So you can't claim that person's disinterested. With regard to what transpires, some of the information contained there is contained for Mr. Andrade. So at one point, the government says we want to believe him. At the next point, we don't want to believe him. I think the burden of proof is on the government with regard to this issue of a break in the continuous presence. All that the statute requires is he prove his 10 years. The break is something that the government must first bring evidence forth and then we have to address. That was involved in this particular case, and we ask the court to grant this. Thank you, Mr. Cola. I would ask both the government and the petitioner to, within 10 days, submit simultaneously, of course. I'm not having a back-and-forth exchange. Their interpretation of Adami v. Holder, 762-667, our case from 2014. Thank you, Your Honor. 762-Fed-3rd-667. ADAME v. Holder. Our thanks to both counsel. The case is taken under advisement.